IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRIS GRINDLING,<br><br>               Plaintiff,<br><br>    vs.<br><br>HEATHER KIMURA; MONICA<br>CHUN,<br><br>               Defendants. | Civ. No. 16-00425 JMS-KSC<br><br>ORDER:  (1) GRANTING<br>APPLICATION TO PROCEED IN<br>DISTRICT COURT WITHOUT<br>PREPAYING FEES OR COSTS;<br>AND (2) DISMISSING FIRST<br>AMENDED COMPLAINT WITH<br>LEAVE TO AMEND |

**ORDER:  (1) GRANTING APPLICATION TO PROCEED IN
DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS; AND
(2) DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE
TO AMEND**

**I. INTRODUCTION**

On August 2, 2016, pro se Plaintiff Chris Grindling ("Plaintiff") filed

a Complaint against Defendants Heather Kimura ("Kimura") and Monica Chun

("Chun") (collectively, "Defendants") that included a request to proceed in forma

pauper*is* ("IFP").  ECF No. 1.  On August 4, 2016, the court (1) DENIED the

request to proceed IFP, without prejudice to filing a fully-completed application on

the court-approved form; (2) DISMISSED the Complaint for failure to state a

claim; and (3) GRANTED leave to amend.  ECF No. 4, (the "August 4 Order").

1

On August 15, 2016, Plaintiff filed (1) a First Amended Complaint ("FAC"), ECF No. 5; and (2) a new Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"), ECF No. 6.

For the reasons discussed below, the court (1) GRANTS Plaintiff's IFP Application; (2) DISMISSES the FAC for failure to state a claim; and (3) GRANTS Plaintiff leave to amend.[1]

## II.  DISCUSSION

### A.    Plaintiff's IFP Application Is Granted

Plaintiff's IFP Application indicates that in the past year, he received $340 in food stamp benefits, and currently has no other income, savings or assets. ECF No. 6, IFP Application ¶¶ 2-5.  It further states that Plaintiff owes $4,700 in court fines.  *Id.* ¶ 8.  Because Plaintiff has made the required showing under 28 U.S.C. § 1915 to proceed in forma pauperis (*i.e.*, without prepayment of fees), the court GRANTS Plaintiff's IFP Application.

///

///

---

[1] Plaintiff served the original Complaint on Kimura before (1) paying a filing fee or being granted IFP status, and (2) it was screened by the court.  *See* ECF No. 7, Waiver of Service.  Because Plaintiff filed a FAC, and because the FAC is dismissed pursuant to this screening order, Kimura need not file an answer at this time.  The court does not require an answer until a complaint (or amended complaint) is screened and is allowed to proceed.

**B.      Background**

*1.      The Complaint*

As alleged in the original Complaint, after being shown a "habeas corpus" issued in March by "Judge Cardoza" to produce Plaintiff in his Maui courtroom for a June 2012 hearing, Kimura "transport[ed] Plaintiff out of court (sic) jurisdiction." ECF No. 1 at 3. Allegedly as a result of this transfer, Plaintiff "missed court dates and all evidentiary hearings were delayed due to all case files disappearing." *Id.* The Complaint further alleged that "[i]n November 2013[,] Judge Cardoza ordered [Plaintiff's] appearance [and] again [Plaintiff] was a no show." *Id.*

Sometime in 2016, Judge Cardoza vacated judgment against Plaintiff, and remanded that action for a new trial. *Id.* Additionally, sometime in 2016, "Monica Chun increased [Plaintiff's] classification to maximum," which caused him to (1) be moved to Halawa Correctional Facility ("HFC"), (2) miss bail hearings before Judge Cardoza, and (3) be unable to post bail from his prison account. *Id.* On July 26, 2016, Plaintiff was released on bail. *Id.* Plaintiff sought unspecified compensatory damages. *Id.* at 2.

Despite finding the Complaint to be "very confusing and largely unintelligible," this court assumed that Plaintiff was attempting to assert a civil

3

rights claim for some general constitutional violation.  ECF No. 4, August 4 Order

at 6-7.  Unable to "discern a cognizable claim against either [Defendant]" however,

the court dismissed the Complaint with leave to amend.  *Id.* at 7.  The court

instructed Plaintiff that if he chooses to file an amended complaint, he:

> must write short, plain statements telling the court:
> (1) the constitutional or statutory right Plaintiff believes
> was violated; (2) the specific basis of this court's
> jurisdiction; (3) the name of the defendant who violated
> that right; (4) exactly what that defendant did or failed to
> do; (5) how the action or inaction of that defendant is
> connected to the violation of Plaintiff's rights; and
> (6) what specific injury Plaintiff suffered because of that
> defendant's conduct.  Plaintiff must repeat this process
> for each person or entity that he names as a defendant.  If
> Plaintiff fails to affirmatively link the conduct of each
> named defendant with the specific injury he suffered, the
> allegation against that defendant will be dismissed for
> failure to state a claim.

*Id.*  The court further instructed that "[t]he amended complaint must designate that

it is the 'First Amended Complaint,' and may not incorporate any part of the

original Complaint, but rather, any specific allegations must be retyped or rewritten

in their entirety.  Plaintiff may include only one claim per count."  *Id.* at 7-8.

### 2.      *The First Amended Complaint*

Based on the same confusing factual allegations, the FAC asserts

claims pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's constitutional rights

to due process and access to the court.  ECF No. 5.  The FAC alleges that "Kimura

sent me to Arizona to prevent my appearances in court [and] Chun transported me

to Oahu to prevent my posting bail." *Id.* at 1.  In addition, "Chun would not . . . let

me post bail from my prison account." *Id.*  The FAC references an underlying

state court criminal case (Cr. No. 07-1-0533) and a separate state court proceeding

for post-conviction relief (S.P.P. No. 12-1-0007) (the "Rule 40 action").  *Id.*  The

FAC alleges that Defendants "were . . . employed and on duty as public safety

officers," but does not specify whether either Defendant is being sued in an official

capacity, individual capacity, or both.  *Id.* at 1.  Plaintiff seeks compensatory

damages for "denied access to courts preventing [his] release on bail."  *Id.*

### 3.   *State Court Actions*

Adding to the overall confusion, it appears that many of the FAC's

factual allegations do not match events listed in the public dockets of the

underlying state court actions.  For example, the docket shows significant,

continuous activity throughout the Rule 40 action.  *See* Hawaii State Judiciary's

Public Access to Court Information, http://hoohiki.courts.hawaii.gov/#/case?

caseId=2PR121000007 (last visited Oct. 19, 2016).[2]  More specifically, it appears

---

[2]   The court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *see also Lee v. City of L.A.*, 250 F.3d 668, 689-90 (9th Cir. 2001) ("A court may take judicial notice of matters of public record.") (citation and quotation marks omitted).

that Judge Cardoza did not issue a "habeas corpus" for a June 2012 hearing in the Rule 40 action.  Rather, according to the docket, Plaintiff filed a petition for writ of habeas corpus on April 27, 2012, and amended that petition on March 22, 2013, but Judge Cardoza denied the petition on March 25, 2013.  *Id.*

Nor does it appear that Judge Cardoza set a June 2012 hearing. Rather, the first hearing appears to have been set pursuant to a March 22, 2013 order.  *Id.*  The hearing was continued twice by the court, and on June 7, 2013, Plaintiff appeared for that first hearing by phone from HCF.  *Id.*  And Plaintiff appeared at numerous other court hearings by phone or in person thereafter.  *Id.* (showing that Plaintiff appeared by phone from HCF for four hearings in 2013 and one hearing on May 20, 2016, and that Plaintiff appeared in person for 46 additional hearings from August 23, 2013 to May 11, 2016).  According to the docket, Plaintiff failed to appear by phone or in person for hearings on November 12 and 15, 2013.  *Id.*

On May 20, 2016, Judge Cardoza orally granted Plaintiff's Rule 40 petition, set a hearing for June 16, 2016 in the underlying criminal action to set new trial date, and set bail at $2,000.  *Id.*

Plaintiff appeared in person for the June 16, 2016 hearing in the underlying criminal action.  *See* Hawaii State Judiciary's Public Access to Court

Information, http://hoohiki.courts.hawaii.gov/#/criminal_case?caseId=

2PC071000533 (last visited Oct. 19, 2016).  Plaintiff also appeared in person for a

July 7, 2016 hearing, during which Judge Cahill set a bail hearing for July 12, 2016

in that case and in another criminal case (Cr. No. 16-1-0266).  *Id.*  Plaintiff

appeared by phone from HCF for the July 12, 2016 hearing, during which bail was

reduced to $100 in Cr. No. 07-1-0533 and $200 in Cr. No. 16-1-0266.  *Id.*  Plaintiff

posted bail in Cr. No. 07-1-0533 on July 26, 2016.  *Id.*

## C.    Standards of Review

The court must subject each civil action commenced pursuant to

28 U.S.C. § 1915(a)[3] to mandatory screening, and order the dismissal of any

claims it finds "frivolous, malicious, failing to state a claim upon which relief may

be granted, or seeking monetary relief from a defendant immune from such relief."

28 U.S.C. § 1915(e)(2)(B); *see, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir.

2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are

not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000)

(en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the

court to sua sponte dismiss an in forma pauperis complaint that fails to state a

claim).

---

[3]   Section 1915(a) governs IFP proceedings.

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim.  *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555)); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678-79 (citing *Twombly*, 550 U.S. at 556).  But factual allegations that only permit the court to infer "the mere

possibility of misconduct" do not show that the plaintiff is entitled to relief as required by Rule 8. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). Thus, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery").

Plaintiff is appearing pro se; consequently, the court liberally construes the FAC. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

**D. Application**

Although Plaintiff does not specify in what capacities Defendants are sued, liberally construed, the FAC asserts claims against them in both their official and individual capacities.

### 1.   *Eleventh Amendment Immunity*

To the extent the FAC asserts claims for damages against Defendants in their official capacities, such claims are barred by the Eleventh Amendment to the United States Constitution.

Absent a waiver by the state or a valid congressional override, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989)  ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). The State of Hawaii has not waived its Eleventh Amendment immunity for § 1983 claims, *see, e.g.*, *Pitts v. Espinda*, 2016 WL 475137, at *4 (D. Haw. Feb. 8, 2016), and Congress did not intend § 1983 to abrogate a state's Eleventh Amendment immunity.  *See Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985).  Thus, Plaintiff's claims for damages against Defendants in their official capacities are DISMISSED with prejudice.

///

///

## 2.    *Section 1983 Claims Against Individual Capacity Defendants*

"To sustain an action under section 1983, a plaintiff must show

(1) that the conduct complained of was committed by a person acting under color

of state law; and (2) that the conduct deprived the plaintiff of a federal

constitutional or statutory right." *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir.

2007) (citation and internal quotation marks omitted), *vacated and remanded on*

*other grounds*, 556 U.S. 1256 (2009); *see also* 42 U.S.C. § 1983; *West v. Atkins*,

487 U.S. 42, 48 (1988).   Additionally, a plaintiff must allege that he suffered a

specific injury as a result of the conduct of a particular defendant, and he must

allege an affirmative link between the injury and the conduct of that defendant.

*Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### a.    *Access to the Courts*

"[P]risoners have a constitutional right of access to the courts."

*Bounds v. Smith*, 430 U.S. 817, 821 (1977).   The Ninth Circuit has "traditionally

differentiated between two types of access to courts claims: those involving

prisoners' right to affirmative *assistance* and those involving prisoners' rights to

litigate without active *interference*." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th

Cir. 2011), *overruled on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759

(2015).   With respect to interference cases, prisoners have the right to file "actions

11

. . . that have a reasonable basis in law or fact," and to "litigate claims challenging

their sentences or the conditions of their confinement to conclusion without active

interference by prison officials."  *Id.* at 1102-03 (citations, quotation marks, and

emphasis omitted).

        To claim a violation of this right, a plaintiff must show that he has

suffered an actual injury as a result of the alleged interference.  *See Lewis v. Casey*,

518 U.S. 343, 351 (1996); *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th

Cir. 2011) ("Actual injury . . . is 'actual prejudice with respect to contemplated or

existing litigation, such as the inability to meet a filing deadline or to present a

claim.'") (quoting *Lewis*, 518 U.S. at 348).  In other words, a plaintiff must be able

to show that the deprivation has directly impacted the relevant litigation in a

manner adverse to him -- it is not sufficient to simply allege a claim of active

interference.  *See Lewis*, 518 U.S. at 353; *Christopher v. Harbury*, 536 U.S. 403,

415 (2002); *Silva*, 658 F.3d at 1104 ("Silva alleged an actual injury: that as a result

of the Defendants' actions [transferring Silva between prisons and seizing his legal

files], several of his pending suits were dismissed.").

        Here, the FAC alleges that because of Kimura's action transferring

him to Arizona, Plaintiff missed unspecified and/or unscheduled court dates, case

files were lost, and evidentiary hearings were delayed.  But these general,

conclusory allegations contradict public docket entries from the Rule 40 action.

The docket shows that from the beginning of the Rule 40 action (1) there was

significant, continuous activity, (2) that Plaintiff could not have missed a June

2012 hearing that was not scheduled, and (3) that Plaintiff filed numerous motions,

briefs and exhibits and appeared for numerous hearings.  *See* Hawaii State

Judiciary's Public Access to Court Information, http://hoohiki.courts.hawaii.

gov/#/case ?caseId =2PR121000007 (last visited Oct. 19, 2016).  In other words,

the FAC fails to allege sufficient facts showing that the loss of case files prevented

Plaintiff from presenting evidence to the court or meeting any court dates.  Nor

does the FAC allege sufficient facts showing that evidentiary hearings were

delayed.  Finally, the FAC fails to allege any facts connecting Kimura to Plaintiff's

failure to appear for court hearings on November 12 and 15, 2013, when the docket

clearly shows that he was housed at HCF on those dates.  In sum, the FAC fails to

assert factual allegations showing actual harm, *i.e.*, that Kimura's action

transferring Plaintiff to Arizona prevented him from prosecuting his Rule 40

action.

     The FAC also alleges that sometime in 2016, Chun increased

Plaintiff's classification, which caused him to be transferred to HCF, miss bail

hearings before Judge Cardoza, and be unable to post bail.  Again, the FAC's

general, conclusory allegations contradict the public dockets. Plaintiff appeared in person for a May 20, 2016 hearing during which Judge Cardoza set bail. *See* Hawaii State Judiciary's Public Access to Court Information, http://hoohiki. courts.hawaii.gov/#/case ?caseId =2PR121000007 (last visited Oct. 19, 2016). Plaintiff also appeared in person for the June 16, 2016 and July 7, 2016 hearings before Judge Cahill and by telephone from HCF for the July 12, 2016 hearing during which Judge Cahill reduced Plaintiff's bail. S*ee* Hawaii State Judiciary's Public Access to Court Information, http://hoohiki.courts.hawaii.gov/#/criminal_ case?caseId= 2PC071000533 (last visited Oct. 19, 2016).   And Plaintiff posted bail on July 26, 2016. *Id.*  The FAC fails to allege sufficient facts to show that Chun's reclassification of Plaintiff, and subsequent transfer to HCF, caused him to miss any bail hearing or suffer any actual injury to his prosecution of an underlying valid court action.

        Finally, Chun's alleged refusal to allow Plaintiff to post bail from his prison account is not within the scope of a constitutional claim for denial of access to the courts. *Cf. Harrell v. Solano Cty. Jail*, 2015 WL 5813700, at *3 (E.D. Cal. Sept. 30, 2015) (finding allegations that deficiencies in prison mail and phone system prevented plaintiff from posting bail insufficient to support a claim for denial of access to the courts -- the plaintiff did not allege that "he missed a filing

deadline or was unable to present a specific non-frivolous claim as a result of the alleged deprivations"); *Nash v. Lucas*, 2015 WL 3649303, at *2 (W.D. Wash. June 11, 2015) ("Plaintiff's inability to contact his bank is not within the scope of a constitutional claim regarding access to the courts.").

Based on the foregoing, the court finds that the FAC fails to state a claim for denial of access to the courts. Accordingly, the § 1983 access to court claim is DISMISSED without prejudice and with leave to amend.

### b.   *Due Process*

Plaintiff appears to allege that Kimura's action "transport[ing]" him to Arizona violated his right to due process because the transfer set in motion the (1) loss of Plaintiff's case files, (2) resetting of evidentiary hearings, and (3) resulting delayed resolution of the underlying state action and release on bail. And although not entirely clear, Plaintiff may be alleging that Chun violated Plaintiff's due process rights by (1) increasing Plaintiff's classification and therefore causing him to be transferred to HCF, which delayed his release on bail, and (2) refusing to let him post bail from his prison account, also delaying his release on bail.

To state a due process violation, a plaintiff must first establish a liberty interest for which protection is sought. Liberty interests may arise from the

Due Process Clause itself or from state law.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013).  If no protected liberty interest is at stake, no process is required.  *See, e.g.*, *Wilkinson*, 545 U.S. at 221; *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  That is, if the challenged prison practice or sanction is "within the normal limits or range of custody which the conviction has authorized the State to impose," there is no liberty interest directly under the Constitution.  *Meachum*, 427 U.S. at 225; *see also Hewitt*, 459 U.S. at 466-70.

A state-created liberty interest may also arise through state statutes, prison regulations, and policies.  *Chappell*, 706 F.3d at 1063.  State liberty interests must be of "real substance" however, meaning freedom from restraint or state action that (1) imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or (2) "will inevitably affect the duration of [a] sentence."  *Id.* at 487.  And, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the

regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *See Wilkinson*, 545 U.S. at 222-23 (quoting *Sandin*, 515 U.S. at 484).

Here, the FAC fails to identify a liberty interest arising under the Due Process Clause or created by state law.  First, although the Ninth Circuit "recognizes a due process right to a speedy direct appeal," it has not "extended this [right] to apply to delays in adjudicating a post-conviction petition."  *Smith v. Cox*, 2014 WL 1682067, at *4 (D. Nev. Apr. 28, 2014); *see also Wick v. Swarthout*, 2013 WL 4510169, at *2 (C.D. Cal. Aug. 23, 2013) ("[T]here is no . . . federal due process right to a speedy resolution of a postconviction petition filed in state court.").  Further, prisoners have no liberty interest in freedom from transfer within the prison, within the state, or to out-of-state facilities.  *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum*, 427 U.S. at 224-25; *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985).   Nor is there a liberty interest in a prisoner's classification status under the Fourteenth Amendment.   *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987); *see Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (stating that the Due Process Clause is not implicated by federal prisoner classification, even where the inmate suffers "grievous loss").

17

Finally, the FAC does not identify any state statute, prison regulation, or policy creating an applicable liberty interest -- Plaintiff does not identify any state law requiring speedy resolution of a Rule 40 petition, forbidding reclassification and/or transfer of inmates under circumstances applicable to Plaintiff, or permitting bail to be posted from an inmate's prison account.

Accordingly, the § 1983 due process claim is DISMISSED without prejudice and with leave to amend.

## E.     Leave to Amend

Plaintiff's FAC is DISMISSED as detailed above.  28 U.S.C. § 1915(e)(2).  He may file a second amended complaint on or before November 18, 2016, that cures the deficiencies noted in this Order.  Plaintiff must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he amends his pleading.  And the amended complaint must be designated as a "Second Amended Complaint."

An amended complaint generally supersedes the original complaint. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  The court will not refer to the original pleading to make an amended complaint complete, although it will not ignore contradictory statements of fact between an original and amended complaint.  Local Rule 10.3 requires that an amended

18

complaint be complete in itself without reference to any prior pleading. Defendants not named in the caption and claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("[C]laims dismissed with prejudice [need not] . . . be repled in a[n] amended complaint to preserve them for appeal . . . [b]ut . . . claims [that are] voluntarily dismissed [are] . . . waived if not repled."). Specific facts of each Defendant's personal conduct that causes a violation of each specific claim must be sufficiently alleged in an amended complaint.

## III.  CONCLUSION

(1)  Plaintiff's IFP Application is GRANTED.

(2)  The FAC is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).  Specifically:  (a) claims against Defendants in their official capacities are DISMISSED without leave to amend; and (b) to the extent Plaintiff names Defendants in their individual capacities, § 1983 due process and access to the court claims are DISMISSED with leave to amend.

(3) Plaintiff may file a second amended complaint curing the deficiencies in his FAC on or before November 18, 2016.

(4) Failure to timely amend the FAC and cure its pleading deficiencies will result in dismissal of this action with prejudice for failure to state a claim.

(5)  The Clerk of Court is DIRECTED to mail Plaintiff a pro se civil rights complaint form to assist him in complying with the directions in this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 20, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Grindling v. Kimura, et al.*, Civ. No. 16-00425 JMS-KSC, Order:  (1) Granting Application To Proceed In District Court Without Prepaying Fees Or Costs; And (2) Dismissing First Amended Complaint With Leave To Amend